SHEILA O'CALLAGHAN (Cal. Bar No. 131032)
Email: ocallaghans@sec.gov
KASHYA SHEI (Cal. Bar No. 173125)
Email: sheik@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Monique C. Winkler, Regional Director
Jason H. Lee, Associate Regional Director
Marc Katz, Regional Trial Counsel
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT NEWELL and BLACK HAWK FUNDING, INC.,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)]; Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa]; and Sections 209(d), 209(3)(1), and 214 of the Investment Advisers Act of 1940 ("Advisers Act") [115 U.S.C. §§ 80b-9(d), 80b-9(e)(1), and 90b-14].

2. Defendants Robert Newell ("Newell") and Black Hawk Funding, Inc. ("Black Hawk") (together referred to as "Defendants") have, directly or indirectly, made use of the means and instruments of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this complaint.

3. Venue is proper in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)], and Sections 209(d) and 209(e)(1) of the Advisers Act [115 U.S.C. §§ 80b-9(d), 80b-9(e)(1)] because certain transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws as alleged in the complaint occurred in Riverside County, California. Newell resides in this district and Black Hawk is headquartered in this district.

## SUMMARY

4. From about November 2016 through at least September 2019 (the "relevant time period"), Defendants Newell and Black Hawk raised approximately $37.7 million from over 200 investors across the United States for the disclosed purpose of investing in the cannabis industry. Rather than use the money raised in the stated manner, however, Defendants engaged in various undisclosed and unauthorized uses of the funds, including making Ponzi-like payments to investors and paying for the expenses of unrelated entities. Additionally, Newell misappropriated at least around $668,000 of investor funds for his own personal benefit. During the relevant time period, Newell was the control person and Chief Executive Officer of Black Hawk.

5. Based on the foregoing, Defendants violated the antifraud provisions of the federal securities laws. Specifically, Defendants violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Sections 206(1),

206(2), and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), (2), and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

6. With this complaint, the SEC seeks against the Defendants permanent injunctions prohibiting future violations of the federal securities laws and injunctions prohibiting Defendants from directly or indirectly, including, but not limited to, through any entity owned or controlled by either Defendant, participating in the issuance, purchase, offer, or sale of any securities, with a carve-out as to Defendant Newell that permits trading in his personal accounts. In addition, against Defendant Newell only, the SEC seeks an order requiring Newell to disgorge his ill-gotten gains, along with prejudgment interest, an order requiring Newell to pay civil penalties, and an order barring Newell from serving as an officer or director of a publicly traded company.

## DEFENDANTS

7. **Robert Newell**, age 63, resides in Indio, California. He founded Black Hawk in or about 2011 and, until his resignation in September 2019, was its CEO and control person. During the relevant time period, Newell owned all of Black Hawk's voting shares and almost all of its non-voting common shares.

8. **Black Hawk Funding, Inc.** was incorporated in Nevada in 2011 and, from at least November 2016 through approximately October 2019, was dually headquartered in Coeur d'Alene, Idaho and La Quinta, California. Black Hawk managed various private funds and other assets. From 2016 to 2019, Black Hawk raised approximately $37.7 million from over 200 investors across the United States in three private funds created to invest in the cannabis industry. Black Hawk was the investment adviser to the three private funds and had exclusive control over the funds, determined which investments the funds made, and received compensation for advising and managing the funds.

## OTHER RELEVANT ENTITIES

9. **Verde Ventures, Inc.** ("Verde Ventures") was a pooled investment vehicle Defendants created and offered to investors beginning in approximately November 2016 for the stated purpose of providing loans and venture capital for "Marijuana emerging markets." From approximately November 2016 to January 2018, Defendants raised about $9.8 million for Verde Ventures from over 50 investors by selling securities that purportedly paid ten percent annual returns on a quarterly basis and that purportedly included potential profit sharing of eight percent on the first $10 million of net income.

10. **Verde Holdings, Inc.** ("Verde Holdings") was a pooled investment vehicle Defendants created and offered to investors beginning in approximately December 2017 for the stated purpose of developing "Cannibis [sic] grow facilities, cultivation projects, distribution networks, and manufacturing centers." From approximately December 2017 to November 2018, nearly $21.1 million was raised for Verde Holdings from almost 160 investors by selling securities that purportedly paid ten percent annual returns on a quarterly basis and that purportedly included potential profit sharing of eight percent on the first $20 million of net income.

11. **Verde Partners, Inc.** ("Verde Partners") was a pooled investment vehicle Defendants created and offered to investors from approximately February 2019 to approximately October 2019 to invest in the cannabis industry. Defendants raised nearly $6.8 million from over 40 investors through the sale of Verde Partners preferred stock. Defendants disclosed in Verde Partners' offering document that investors would receive a "pro rata cash dividend equal to 10.0% of the Preferred Sock's purchase price," with the timing of the payments to be declared by Verde Partners' Board of Directors. In addition, the preferred shares purportedly included potential profit sharing of eight percent on the first $40 million of net income. In late 2019, Defendants ceased fundraising from investors for Verde Partners shortly after Newell's departure from Black Hawk in September 2019.

12. **National Asset Valuation Services, LLC** ("NAVS") was a purported Washington company founded in 2008, which was wholly owned by Newell. But in actuality, Newell used NAVS as a conduit to misappropriate money from Verde Ventures and Verde Holdings for his personal benefit.

## THE ALLEGATIONS

13. In approximately 2011, Newell founded Black Hawk for the primary purpose of providing hard money loans for real estate transactions. By approximately 2016, Black Hawk managed or had an ownership interest in dozens of affiliated entities. At all relevant times, Newell controlled Black Hawk.

14. By at least early 2016, Defendants' businesses were struggling and Newell determined that investing in the cannabis industry could be profitable. Newell then shifted Black Hawk's business to investing in the cannabis industry by raising money through three securities offerings. From about November 2016 through approximately September 2019, Newell through Black Hawk offered to investors three private funds created to invest in the cannabis industry: Verde Ventures, Verde Holdings, and Verde Partners (collectively, the "Verde Funds").

**Defendants' Fraudulent Conduct**

A. **Defendants' Materially False and Misleading Statements to Investors**

15. In order to raise money for the Verde Funds, Defendants provided offering materials to investors, which for Verde Ventures and Verde Holdings consisted of one-page documents, each entitled "Executive Loan Summary," and for Verde Partners consisted of a private placement memorandum ("PPM").

16. The Executive Loan Summaries and the PPM stated that the money raised would be invested in the cannabis industry, including a grow facility located in Coachella, California (the "Coachella Campus"). For Verde Ventures and Verde Holdings, the Executive Loan Summaries also stated that investments could include other cannabis-related projects such as cultivation, distribution, extraction, a lab testing facility, and manufacturing. The Verde Partners PPM separately disclosed that investor

COMPLAINT 5

funds could be used "to finance other opportunities consistent with the Company's [Verde Partners'] plan of operation," which were specific to the cannabis industry. The PPM also disclosed that a management fee would be paid by Verde Partners to Black Hawk. No other use of investor funds was disclosed by the Executive Loan Summaries and PPM.

17. The Executive Loan Summaries for Verde Ventures and Verde Holdings disclosed that investors' securities purchases would carry a ten percent annual return, paid quarterly. The PPM for Verde Partners stated that investors would receive a ten percent cash dividend when declared by Verde Partners' Board of Directors.

18. But substantial portions of investor funds were not invested in the cannabis industry and were instead used to make Ponzi-like payments to investors; were used for undisclosed purposes such as for other Black Hawk affiliated/managed entities not in the cannabis industry or to pay salespersons' commissions; and were misappropriated by Newell. These uses of investor funds were not disclosed to investors or authorized by Verde Ventures' and Verde Holdings' Executive Loan Summaries or Verde Partners' PPM.

**B.   Defendants Misused Investor Proceeds.**

**i.   Defendants Paid Returns to Investors Through Ponzi-like Payments.**

19. From at least November 2016 through approximately September 2019, inflows of capital to Black Hawk consisted primarily of money raised from the Verde Funds' investors. During this relevant time period, the Verde Funds were not profitable and lacked sufficient revenue to pay the ten percent returns promised to investors.

20. Nevertheless, from approximately April 2017 through June 2019, on a quarterly basis, Newell ordered Black Hawk employees to pay the ten percent purported returns to investors. Newell made the ten percent payments to investors even though he knew that the money used to make payments was sourced from other

investors' money—money that Defendants represented to investors would be used to invest in the cannabis industry.

21. Defendants knew, or were reckless in not knowing, that these ten percent Ponzi-like payments that were purportedly returns to investors were in fact a misuse of investor money, which created the false impression to new investors and lulled existing investors into believing that the Verde Funds' investments were successful and lucrative. Newell and Black Hawk continued to use the Executive Loan Summaries and the PPM to raise money from investors, even while knowing that they were unable to pay a ten percent return based on the underlying investments of the Verde Funds, which were unprofitable.

### ii. Defendants Improperly Commingled and Further Misused Investor Funds.

22. At the time of their investments, Black Hawk, through the Verde Funds' offering documents, informed investors that their money would be used for investments in the cannabis industry. But beginning in December 2016, as Black Hawk's other businesses were struggling, Newell commingled funds by first transferring money from Verde Ventures to Black Hawk, and then disbursing that money to other Black Hawk managed or affiliated entities. Once Verde Holdings was established, Newell almost immediately engaged in the same conduct of transferring money out of Verde Holdings to Black Hawk to be disbursed as Newell saw fit. These significant transfers from Verde Ventures and Verde Holdings to Black Hawk resulted in an outstanding balance owed by Black Hawk of at least $2.5 million by September 30, 2019, when Newell was forced out of Black Hawk. These transfers to Black Hawk that were then disbursed to other Black Hawk-affiliated entities provided no benefit to Verde Ventures or Verde Holdings. They were not for the purposes disclosed in the offering documents and did not provide any other financial benefit to the two Verde funds. Thus, these undisclosed transfers were a misuse of the investors' funds.

23. In addition, Newell also misused investor funds by paying undisclosed brokerage commissions. The Executive Loan Summaries did not disclose to investors that their money could be used to pay sales commissions. But starting in or about December 2016 through May 2018, when salespersons sold securities in Verde Ventures and Verde Holdings, Newell paid sales commissions directly from the two Verde funds. These sales commission payments totaled at least $408,689.

### iii. Newell Misappropriated Investor Funds.

24. From about February 2017 through October 2018, Newell misappropriated at least around $668,000 of investors' money from Verde Ventures and Verde Holdings by: (a) paying off the second mortgage on a property owned by NAVS, an entity Newell owns, (b) using Verde money to pay himself for purported rent and other business expenses for Verde Ventures and Verde Holdings, and (c) taking profits from selling shares of a startup entity, where the shares belonged to Verde Ventures and Verde Holdings.

25. NAVS, an entity wholly owned and controlled by Newell, owned Black Hawk's office in Coeur d'Alene, Idaho (the "Office"). NAVS had a second mortgage on the Office.

26. In March 2018, in two separate transactions, money from Verde Holdings was used to pay down $310,300 on the second mortgage on the Office. In the first transaction, on or about March 2018, Newell directed Black Hawk to transfer $100,000 from Verde Holdings to pay the second mortgage. In the second transaction, on or about March 2018, Newell used approximately $210,300 ultimately sourced mostly from Verde Holdings to pay the second mortgage. Newell did not use any of his own money in paying down the second mortgage. When Newell sold the Office in June 2018, he received $500,000 in sales proceeds and did not repay the approximately $310,300 owed to Verde Holdings.

27. From approximately February 2017 to October 2018, Newell also misappropriated $212,000 by charging Verde Ventures and Verde Holdings undisclosed and illegitimate costs in the form of rent for purported use of the Office and for his purported business travel and office expenses. The rent paid by the two Verde funds was purportedly for the Office, but the two funds already paid rent for an office located in La Quinta, California, where the funds' operations were based. During that same period, Newell also transferred money from the two Verde funds to NAVS for his unexplained purported expenses, which were in round thousand dollar amounts and included reimbursements for personal expenses such as spending at casinos, cash withdrawals, making first mortgage payments on the Office, and other personal expenses such as meals. These payments were not disclosed to investors in Verde Ventures and Verde Holdings' Executive Loan Summaries or in any other documents at any time during the relevant time period.

28. Newell also misappropriated $146,000 from Verde Ventures and Verde Holdings when he directed the sale of shares in a cannabis startup, High Desert Management, LLC ("High Desert"), which shares should have belonged to those two funds. The High Desert shares were obtained in a manner that Newell knew resulted in the shares belonging to Verde Ventures and Verde Holdings. Newell provided no money to acquire the shares. Instead, these shares were acquired in part using money from Verde Ventures and Verde Holdings and then sold at a high markup to other investors. Newell profited $146,000, even though the shares belonged to Verde Ventures and Verde Holdings. Newell also admitted that these shares rightfully belonged to Verde Ventures and Verde Holdings.

C. **Newell and Black Hawk Were Investment Advisers.**

29. Black Hawk and Newell were investment advisers to the Verde Funds. Newell, as Black Hawk's then CEO, managed the affairs of the Verde Funds, including the investments the Verde Funds made in the securities of cannabis startups.

30. Additionally, Black Hawk received compensation for its services in the form of a four percent management fee paid by Verde Partners as disclosed in its PPM. Black Hawk also received compensation from Verde Ventures and Verde Holdings, because those two funds paid Black Hawk's expenses, such as rent for the La Quinta office, utilities, and salaries that otherwise would have been paid by Black Hawk.

31. Newell was compensated in the form of a salary and dividends from Black Hawk.

32. As both Newell and Black Hawk provided advice to the Verde Funds regarding investments in securities and were compensated for their advice, they both acted as investment advisers.

### D. Newell and Black Hawk Acted With Scienter.

33. Newell drafted, reviewed, and had final authority over the Executive Loan Summaries and PPM provided by Black Hawk to the Verde Funds' investors. Additionally, Newell himself engaged in the misuse of investors' funds. His actions included: making the Ponzi-like payments, which he knew came from investors' capital; transferring Verde Ventures and Verde Holdings investor money at his discretion for other uses unrelated to those funds; and misappropriating investors' money. Newell knew, or was reckless in not knowing, that the Verde Funds' Executive Loan Summaries and PPM contained materially false statements and omissions, and were misleading.

34. In addition, Newell engaged in a scheme and deceptive course of business to defraud investors by creating a false impression that the Verde Funds were more successful than they were, which allowed Newell to continue raising funds from investors and to enrich himself at the expense of the investors. Newell knew, or was reckless in not knowing, that he engaged in a scheme to defraud investors and potential investors.

35. As Newell was during the relevant period the CEO and control person of Black Hawk, Newell's scienter is imputed to Black Hawk.

## FIRST CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

36. The SEC realleges and incorporates by reference paragraphs 1 through 35.

37. Newell and Black Hawk, by engaging in the acts and conduct described above, directly or indirectly, in connection with the purchase or sale of securities, by use of means or instrumentalities of interstate commerce, or of the mails, with scienter:

    a. Employed devices, schemes, or artifices to defraud;

    b. Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c. Engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers of securities.

38. By reason of the foregoing, Newell and Black Hawk violated, and unless restrained and enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act

39. The SEC realleges and incorporates by reference paragraphs 1 through 35.

40. Newell and Black Hawk, by engaging in the acts and conduct described above, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails:

    a. With scienter, employed devices, schemes, or artifices to defraud;

  b. Obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

  c. Engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers.

41. By reason of the foregoing, Defendants Newell and Black Hawk violated, and unless restrained and enjoined, are reasonably likely to continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF

### Violations of Sections 206(1) and 206(2) of the Advisers Act

42. The SEC realleges and incorporates by reference paragraphs 1 through 35.

43. During the relevant period, Defendants Newell and Black Hawk were engaged in the business of advising others, specifically the Verde Funds, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, which they did in exchange for compensation. Newell and Black Hawk were therefore investment advisers to the Verde Funds.

44. As set forth above, Defendants, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly (a) employed devices, schemes, or artifices to defraud clients or prospective clients; and (b) engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon clients or prospective clients.

45. By reason of the foregoing, Defendants Newell and Black Hawk have violated, and unless restrained and enjoined, are reasonably likely to continue to violate, Sections 206(1) and (2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) & 80b-6(2).

## FOURTH CLAIM FOR RELIEF

**Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder**

46. The SEC realleges and incorporates by reference paragraphs 1 through 35.

47. During the relevant time period, the Verde Funds were pooled investment vehicles and Defendants acted as the pooled investment vehicles' investment adviser.

48. By engaging in the conduct described above, Defendants, directly or indirectly, while acting as an investment adviser to a pooled investment vehicle, by use of the mails or means or instrumentalities of interstate commerce: (a) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in the pooled investment vehicle; or (b) engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

49. By engaging in the conduct described above, Defendants Newell and Black Hawk have violated, and unless restrained and enjoined, are reasonably likely to continue to violate, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## FIFTH CLAIM FOR RELIEF AGAINST NEWELL ONLY

**In the Alternative, Newell Aided and Abetted Black Hawk's Violations of Antifraud Provisions of the Federal Securities Laws**

50. The SEC realleges and incorporates by reference paragraphs 1 through 35.

51. By engaging in the conduct described above, Black Hawk, directly or indirectly, violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; Section 17(a) of the Securities; and Sections 206(1), 206(2) and 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.

52. By engaging in the acts and conduct alleged above, Newell knowingly or recklessly provided substantial assistance to Black Hawk in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; Section 17(a) of the Securities [15 U.S.C. § 77q(a)]; and Sections 206(1), (2), and (4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8] and thereby aided and abetted such violations, and unless restrained and enjoined, will continue to violate these provisions.

**PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that the Court, as to Defendant **Newell:**

**I.**

Issue a judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Newell, and his agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Sections 206(1), (2), and (4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

**II**.

Issue a judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendant Newell from, directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security, provided,

however, that such injunction shall not prevent him from purchasing or selling securities for his own personal accounts.

### III.

Order Defendant Newell to disgorge all monies received from his illegal conduct, together with prejudgment interest thereon, pursuant to Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)].

### IV.

Order Defendant Newell to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

### V.

Order pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 78t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(a)(d)] that Defendant Newell is prohibited from serving as an officer or director of any company that has a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

### VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### VII.

Grant such other and further relief as this Court may determine to be just and necessary.

WHEREFORE, the SEC respectfully requests that the Court, as to Defendant **Black Hawk:**

### VIII.

Issue a judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Black Hawk and its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Sections 206(1), (2), and (4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

### IX.

Issue a judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendant Black Hawk from, directly or indirectly, including, but not limited to, through any entity owned or controlled by it, participating in the issuance, purchase, offer, or sale of any security.

Dated: July 22, 2024            Respectfully submitted,

/s/  Kashya Shei

Kashya Shei
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION